UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHI'S ACRES, INC., a California corporation; and ARCHIPLEY'S FAMILY FARM, INC., a California corporation,<br><br>                    Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET SERVICE, INC., a Delaware corporation; WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation; and DOES 1–50, inclusive,<br><br>                    Defendants. | Case No.: 19-CV-2478 JLS (MSB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(ECF No. 15) |

      Presently before the Court is Defendants Whole Foods Market California, Inc. and Whole Foods Market Service, Inc.'s Motion to Dismiss for Failure to State a Claim ("Mot.," ECF No. 15). Also before the Court is Plaintiffs Archi's Acres, Inc. and Archipley's Family Farm, Inc.'s Opposition to ("Opp'n," ECF No. 16) and Defendants' Reply in Support of ("Reply," ECF No. 17) the Motion. The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 18. Having carefully reviewed Plaintiffs' First Amended Complaint ("FAC," ECF No. 11), the Parties' arguments, and the law, the Court **GRANTS** the Motion.

# BACKGROUND

Plaintiffs Archi's Acres, Inc. and Archipley's Family Farm, Inc. are farmers and growers of high-quality living organic basil. FAC ¶ 1. In 2007, Defendants began purchasing small quantities of basil from Plaintiffs and selling the product in Whole Foods Market stores in the San Diego area. *Id.* ¶ 14. Defendants allegedly approached Plaintiffs in 2012 with an offer for Plaintiffs to supply basil products for Defendants' stores in the entire southwest region. *Id.* ¶ 15. On or around June 6, 2012, Plaintiffs allege Defendants signed a contract committing to purchase $573,000 in basil from Plaintiffs per year. *Id.* ¶ 16. Plaintiffs claim the contract contained "all material terms required of an agreement," including "the price per unit, number of weekly units, units per year, number of units per case, and quality requirements." *Id.* ¶ 16. Plaintiffs allege that as part of this contract, Defendants "recruit[ed] Plaintiffs for a partnership and joint venture." *Id.* ¶ 15.

Plaintiffs planned to increase basil production by building a greenhouse to meet the needs of the contract. *Id.* ¶ 17. Plaintiffs estimated the greenhouse project would cost a total of $870,000. *Id.* ¶ 18. Defendants gave Plaintiffs a "local producer loan" application, and Plaintiffs subsequently applied for and secured the loan through Defendants to help fund the "purchase of a hydroponic greenhouse to provide organic living basil to the southwest region of Whole Foods Market." *Id.* Defendants issued Plaintiffs the "local producer loan" on January 25, 2013 for $100,065. *Id.* ¶ 19.

On February 25, 2013, Defendants presented Plaintiffs with an oversized check for $100,000 at the opening of Defendants' store location in Del Mar, California. *Id.* ¶ 20. Plaintiffs allege that Defendants used and continue to use a photograph of this event in Defendants' advertising materials "to show Defendants' purported commitment to local farms and giving back to the local community." *Id.* Plaintiffs obtained additional financing from other sources and completed the greenhouse project in late 2017 at a cost of $1,260,000, plus interest. *Id.* ¶¶ 18, 21–22.

Plaintiffs allege that after completing the greenhouse project, "Defendants abandoned Plaintiffs, purchased from other suppliers and reduced their orders from

Plaintiffs." *Id.* ¶ 23. Defendants purchased $76,000 in basil from Plaintiffs in 2018, and subsequently "purchased even less in 2019 and have now ceased ordering from Plaintiffs." *Id.* ¶ 25. Plaintiffs allege damages in excess of $2 million. *Id.* ¶ 26. Plaintiffs assert causes of action for breach of contract, promissory estoppel, fraud, negligent misrepresentation, breach of fiduciary duty, and violation of the Lanham Act. *Id.* ¶¶ 30–92.

Plaintiffs filed their Complaint on December 24, 2019. *See generally* ECF No. 1. Defendants filed a Motion to Dismiss for failure to state a claim and lack of subject matter jurisdiction on February 5, 2020. ECF No. 5. Instead of opposing the motion, Plaintiffs filed the operative First Amended Complaint on February 26, 2020. ECF No. 11. The Court denied Defendants' first Motion to Dismiss as moot. ECF No. 12. Defendants then filed the instant Motion. *See* ECF No. 15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

*Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I. Lanham Act Claim

Defendants argue that Plaintiffs' sixth cause of action fails to state a claim under the Lanham Act. Section 43(a) of the Lanham Act provides for civil liability against

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1225(a). Section 43(a) contains two distinct prongs: a "trademark" or "false association" prong under subsection (1)(A) and a "false advertising" prong under subsection (1)(B). *See, e.g.*, *Summit Tech., Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996) (identifying "trademark infringement/false designation of origin" prong and false advertising prong); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003) (distinguishing subsection (1)(A)'s "confusion . . . as to the origin" provision from subsection (1)(B)'s "misrepresents the nature, characteristics [or] qualities" provision); *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) (stating section 1225(a) creates two bases of liability, false association and false advertising). The Court will address the sufficiency of Plaintiffs' pleading regarding the two prongs of Section 43(a) below.

### A.   *Trademark Infringement/False Association*

As to the first prong of Section 43(a), Defendants argue that Plaintiffs fail to adequately allege trademark infringement because Plaintiffs "only allege that [they] own[] certain marks and that '[d]efendants infringed upon [their] marks' without ever alleging how [Defendants] used [Plaintiffs'] marks, much less in a manner likely to cause consumer confusion." Mot. at 6 (quoting FAC ¶¶ 83, 87–88).[1]

///

---

[1] Plaintiffs argue that Defendants' Motion to Dismiss "failed to address Plaintiffs' claim for false association . . . ." Opp'n at 11. Defendants counter that "it was not clear from the complaint that [Plaintiffs] w[ere] making that distinct claim." Reply at 2. Plaintiffs' Sixth Cause of Action is simply titled "Violation of Lanham Act." FAC at 16. The Court agrees with Defendants that it was not entirely clear from the First Amended Complaint that Plaintiffs were making a distinct claim for false association; however, the Court considers Plaintiffs' false association and trademark infringement claims together. *See United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL 6788310, at *9 (N.D. Cal. Dec. 2, 2014).

"A false association claim is often considered as a trademark infringement claim." *United Tactical Sys., LLC*, 2014 WL 6788310, at *9; *see also Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1254 (S.D. Cal. 2008) ("Section 43(a)(1) provides similar protection to trademarks regardless of registration." (footnote and citations omitted)). To state a claim for trademark infringement under the Lanham Act, a plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).

As to the first factor, "[t]o acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citation omitted). "Therefore, a party pursuing a trademark claim must meet a threshold 'use in commerce' requirement." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012). "[R]egistration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of . . . exclusive right to use the mark on the goods and services specified in the registration." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). The opposing party may rebut the presumption of ownership by showing it used the mark in commerce first. *Id.* Here, Plaintiffs have shown "VSAT Archi's Acres" is a federally registered trademark and, as such, is entitled to a presumption of validity. *See* FAC ¶ 83. Defendants make no argument rebutting this presumption; thus, Plaintiffs have established a protectable ownership interest in the mark. The Court's inquiry therefore focuses on likelihood of confusion.

In analyzing whether there is a likelihood of confusion between two marks, courts consider eight factors, known as the *Sleekcraft* factors. *Rearden LLC*, 683 F.3d at 1209. These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity

of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). However, these eight factors are not exhaustive and "other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id.*

Unlike actual source confusion, initial interest confusion occurs when someone uses another's trademark to divert consumers looking for products related to that mark, and that user "improperly benefits from the goodwill that [the mark's owner] has developed in its mark." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062. "Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002) (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062) (internal quotation marks omitted). Because consumer confusion is an essential element of trademark infringement, "when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion." *Network Automation, Inc.*, 638 F.3d at 1149.

Defendants argue that Plaintiffs fail to allege how the marks are used "in a manner likely to cause confusion." Mot. at 6. Defendants contend Plaintiffs' FAC is insufficient to plead trademark infringement because "it is not related to confusion over marks or products; no consumer would confuse [Plaintiffs'] product with any other product sold at Whole Foods, including [Defendants'] own products." Reply at 3. Instead of actual confusion, however, Plaintiffs premise their likelihood of confusion allegation on initial interest confusion. Plaintiffs assert that Defendants' advertising and website confused consumers into thinking Defendants were associated with Plaintiffs, and that Plaintiffs' products were available for sale in Defendants' stores. FAC ¶ 88. Plaintiffs argue that Defendants have caused "initial interest confusion whereby consumers were seeking

Plaintiffs' products and were lured to Defendants' stores, at which they were unable to purchase Plaintiffs' products and instead purchased a product sold by Defendants." *Id.*

The Court finds that Plaintiffs have not alleged sufficient likelihood of confusion to survive Defendants' Motion to Dismiss and instead only establish the mere possibility of diversion. *See Network Automation, Inc.*, 638 F.3d at 1149. Plaintiffs allege Defendants' representations on their website likely confuse consumers "regarding the association of Plaintiffs with Defendants, Defendants' purported commitment to local farmers, Plaintiffs' and Defendants' status and affiliation, and the availability of Plaintiffs' basil in Defendants' stores." FAC ¶ 88. The facts Plaintiffs plead as the basis for these assertions is the use of the "Archi's Acres" trademark on Defendants' website in connection with an article from April 27, 2013 that stated: "A recent Local Producer Loan from Whole Foods Market™ will help purchase hydroponic greenhouse equipment to outfit a new 30,000 square foot greenhouse and bring Archi's Acres basil into all Whole Foods Market stores in Southern California." *Id.* ¶ 28. Plaintiffs also allege that "Defendants' website posted the picture of Plaintiffs receiving the oversized 'local producer loan' check and featured videos of Plaintiffs and their farm, including, without limitation, a video in which Defendants' buyer is at Plaintiffs' farm." *Id.* ¶ 28. These facts do not tend to mislead consumers about the association between Plaintiffs and Defendants because Plaintiffs and Defendants were associated at the time of the article; Defendants did issue Plaintiffs a local producer loan. Additionally, the article does not make specific representations about when or in what quantities Plaintiffs' basil would be available in Defendants' stores. Defendants did in fact purchase Plaintiffs' products. For example, Plaintiffs admit that Defendants purchased $76,000 in basil from Plaintiffs in 2018. *Id.* ¶ 25.

Furthermore, Plaintiffs have not plausibly alleged that Defendants intended to divert Plaintiffs' customers to their stores by trading on the goodwill of Plaintiffs' marks. This intent is relevant because the court in *Brookfield* stated that, "in *Dr. Seuss*, the Ninth Circuit explicitly recognized that the use of another's trademark in a manner *calculated* 'to capture initial consumer attention, even though no actual sale is finally completed as a result of the

confusion, *may* be still an infringement.'" *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062 (citing *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997)) (emphasis added). The facts cited by Plaintiffs tend to show publicization of an event—the issuance of the local producer loan—not a calculated effort by Defendants to capture initial consumer attention. Plaintiffs make conclusory allegations that "Defendants have knowingly and intentionally misled consumers as to their association with Plaintiffs and the availability of Plaintiffs' basil in Defendants' stores to capitalize upon Plaintiffs' valuable goodwill in their names and marks, as well as the military service of Colin Archipley and the public and charitable works of Colin and Karen Archipley." FAC ¶ 90. The only fact Plaintiffs plead relating to the availability of Plaintiffs' products in Defendants' stores is that the article states the loan "will help . . . bring Archi's Acres basil into all Whole Foods Market stores in Southern California." FAC ¶ 28. This statement is too generalized to plausibly mislead consumers about the availability of Plaintiffs' products in Defendants' stores. Accordingly, Plaintiffs have not pleaded sufficient facts to state a plausible claim for trademark infringement or false association based on initial interest confusion.

Therefore, the Court finds that Plaintiffs have not satisfactorily alleged trademark infringement or false association claims and **GRANTS** Defendants' Motion as to these claims.

### B.   *False Advertising*

As to the second prong of Section 43(a), Defendants move to dismiss Plaintiffs' false advertising claim on the ground that Plaintiffs fail to allege facts "establishing a plausible claim that [Defendants] made any false statement of fact about the origin or characteristics of [Plaintiffs'] product or any of [Defendants'] products." Mot. at 7.

To bring a false advertising suit under the Lanham Act, a plaintiff must show "that a statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely

to be injured by the false advertisement." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). The parties agree that the Rule 9(b) heightened pleading standard applies to a false advertising claim under the Lanham Act that is "grounded in" or "sounds in" fraud. Mot. at 7; Opp'n at 8; *see also Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

Keeping in mind the heightened pleading standard, Plaintiffs' FAC fails at the first prong of a false advertising claim because Plaintiffs have not plausibly established that Defendants made a false or misleading statement in a commercial advertisement or promotion. Plaintiffs allege that Defendants "posted the picture of Plaintiffs receiving the oversized 'local producer loan' check and featured videos of Plaintiffs on their farm . . . Defendants' website also contained articles affiliating themselves with Plaintiffs." FAC ¶ 28. None of this information is false or misleading; Plaintiffs did receive a local producer loan from Defendants to purchase hydroponic greenhouse equipment. *See id.* ¶ 19 (stating Plaintiffs were to use the loan from Defendants "[t]o purchase hydroponic equipment"). The single article Plaintiffs reference does not state that Plaintiffs' products are currently available for purchase in Defendants' stores, but that the loan "will help . . . bring Archi's Acres basil into all Whole Foods Market stores in Southern California." *Id.* ¶ 28. The statements are not false, and it is not likely a substantial segment of consumers would be misled about what products are available for purchase at Defendants' stores.

Moreover, Plaintiffs do not address Defendants' argument regarding the false advertising claim in their Opposition. *See Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a plaintiff has "effectively abandoned" a claim when he fails to respond to arguments in motion to dismiss, and therefore the claim could not be raised on appeal); *Allen v. Dollar Tree Stores, Inc.*, 475 Fed. Appx. 159, 159 (9th Cir. 2012) (affirming district court's dismissal of plaintiff's claims in which plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument");

*Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1104 (S.D. Cal. 2018) (granting motion to dismiss on a claim as the plaintiff abandoned the claim because he failed to address the issue in his opposition). Here, Plaintiffs failed to address the arguments raised by Defendants regarding the false advertising claim.

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' false advertising claim.

## II. Subject Matter Jurisdiction

Federal courts "have an ongoing obligation to be sure that jurisdiction exists." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (citing *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1009 (9th Cir. 2000)). Federal courts are courts of limited jurisdiction and generally may only exercise jurisdiction based on either diversity jurisdiction or federal question jurisdiction. Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship. 28 U.S.C. § 1332. Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiffs' FAC alleges this Court "has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332(a), since this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00." FAC ¶ 2. However, on the face of the FAC, Plaintiffs are both California corporations, FAC ¶¶ 4–5, and Defendant Whole Foods Market California, Inc. is also a California corporation, *id.* ¶ 7. Therefore, there is not complete diversity between the parties and this Court cannot exercise jurisdiction based on diversity. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) ("Since *Strawbridge v. Curtiss*, [the United States Supreme Court] ha[s] read the statutory formulation 'between . . . citizens of different States' to require complete diversity between all plaintiffs and all defendants." (citations omitted)).

Plaintiffs further allege that this Court "has subject matter jurisdiction over the Lanham Act claims herein under 15 U.S.C. §1121 and 28 U.S.C. § 1338 and has

supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1367." Because the Court has granted Defendants' Motion to Dismiss as to Plaintiffs' Lanham Act claims, *see supra* Section I, there is no longer a federal question basis for this Court's jurisdiction.

In light of the dismissal of Plaintiffs' Lanham Act claims and because this case is still in its early stages, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against Defendants. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (citing 28 U.S.C. § 1367(c)(3))).

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' remaining causes of action.

## CONCLUSION

In sum, the court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' Lanham Act claims and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' sixth claim. The Court sua sponte **DISMISSES WITHOUT PREJUDICE** the remainder of Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction. Plaintiffs may file an amended complaint within thirty (30) days of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: February 8, 2021

Hon. Janis L. Sammartino
United States District Judge